UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARIA TEIXEIRA, )
 )
        Plaintiff )
 )
    v. )
 ) CIVIL ACTION
MICHAEL J. ASTRUE, COMMISSIONER ) NO. 10-10048-WGY
OF THE SOCIAL SECURITY )
ADMINISTRATION, )
 )
        Defendant. )
 )

MEMORANDUM AND ORDER

YOUNG, D.J.                                           December 21, 2010

**I.    INTRODUCTION**

    Maria Teixeira ("Teixeira") seeks judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying Teixeira's claim for a Period of Disability Benefits and Social Security Disability Insurance Benefits ("SSDIB"). Teixeira argues that the hearing officer improperly rejected Teixeira's claim of disabling pain and that the hearing officer's findings regarding Teixeira's work skills were not supported by substantial evidence. The Commissioner has moved for an order affirming his final decision.

**A. Procedural Posture**

Teixeira applied for SSDIB on January 22, 2008, alleging disability resulting from injuries sustained in a motor vehicle accident on August 31, 2007. Admin. R. 105. Teixeira's claims were denied by the Social Security Administration (the "Administration") initially on June 11, 2008, and upon reconsideration on July 25, 2008. Id. at 47. On July 7, 2009, the Administration held a hearing, and, on July 27, 2009, the hearing officer issued an unfavorable notice of decision. Id. at 6-16. The Disability Review Board failed to complete it's review of the case in the time allotted; thus, the decision of the hearing officer was adopted as the final decision of the Commissioner on November 18, 2009. Id. at 1.

Teixeira instituted this action seeking reversal of the Commissioner's decision on July 12, 2010. On September 22, 2010, the Commissioner filed a motion for an order affirming his decision.

**B. Factual Background**

Teixeira was born on May 28, 1969. Id. at 85. She has at least an eighth grade education, received in Cape Verde, and has five children, ranging in age from eight to twenty-two. Id. at 20. Teixeira previously worked for twenty years as a quality shoe inspector for New Balance Athletic Shoe, Inc. Id. at 23-4, 90-5. Following a motor vehicle accident resulting in a

degloving injury to the left hand, Teixeira discontinued work as of August 31, 2007. Id. at 229. She was initially diagnosed with extensive soft tissue injuries and fractures in her left fifth finger. Id. at 162.

On September 1, 2007, Teixeira underwent surgery. Id. at 151. After undergoing physical therapy, Teixeira declined to have further surgery since a positive outcome could not be guaranteed. Id. at 150. Occupational Therapy Progress Notes, dating from September 24, 2007 to February 11, 2008, reported a decrease in pain from an eight out of ten to a steady two or three out of ten as of December 11, 2007. See id. at 174-228. On April 28, 2008, Teixeira met with her treating physician, Dr. Andrew Stein ("Dr. Stein"), to whom she relayed that she had ceased undergoing outpatient physical therapy. Id. at 261. Despite some weakness in her left hand and numbness in her ring and small fingers she believed she could live with her condition. Id. Dr. Stein advised her to continue normal activities as tolerated. Id.

Disability Determination Services of the Massachusetts Rehabilitation Commission requested that Teixeira be evaluated by a consultant; as a result, on May 5, 2008, she was examined by Dr. Stanley Leitzes ("Dr. Leitzes"). Id. at 229-30. Dr. Leitzes's evaluation reported that Teixeira had a healthy appearance and was not in acute distress. Id. at 230.

Furthermore, Dr. Leitzes reported that examination of her left hand revealed gross atrophy, resulting in an inability to fully extend her small and ring fingers. Id. Additionally, two doctors affiliated with Disability Determination Services performed Residual Functional Capacity assessments. On June 10, 2008, Dr. M.A. Gopal concluded that Teixeira could perform light as well as sedentary work with manipulative restrictions, limiting handling with her left hand. Id. at 233-40. Dr. John Jao made similar findings after his evaluation on July 17, 2008. Regarding Teixeira's ability to engage in light and sedentary work, he noted the same limitations of gross manipulation in handling, adding only that she should avoid hazards. Id. at 241-48.

Dr. Stein assessed Teixeira's capacity for Liberty Mutual, her insurance carrier, on November 14, 2008, because she had requested to return to gainful employment. Id. at 257. On May 9, 2009, Dr. Stein signed a form for Liberty Mutual averring that Teixeira was able to work with the limitations noted in the November 14th assessment. Id. The assessment indicated Teixeira would be able to work full-time, except for the use of her left arm; there were no limitations on her ability to sit, stand, or walk. Id. at 258.

Teixeira's Social Security Administration function report indicated that her daily activities included running errands, cooking, cleaning, shopping as necessary, and caring for children. Id. at 113. She did these activities with the help of her older daughters. Id. at 114. Generally, Teixeria reported no problems with personal care aside from trouble bathing and caring for her hair. Id. at 114. Before the hearing officer, Teixeira testified that she was right-handed and did all activities with that hand, which was starting to cause her pain. Id. at 23. Teixeira indicated that she could do her daily activities for five to twenty minutes before having to rest for an hour. Id. at 32-33. Finally, Teixeira testified at the hearing that she suffered from constant pain, rated at an eight out of ten, and would take up to 800 milligrams of Motrin a day to defray the pain. Id. at 26.

A vocational expert, Dr. Robert Lasky ("Dr. Lasky"), testified at the hearing that Teixeira's past relevant work was categorized as medium and semi-skilled with a specific vocational preparation code of five. Id. at 35. Dr. Lasky opined that Teixeira had potentially transferrable skills relating to her past relevant work. Id. When provided hypothetical scenarios by the hearing officer, Dr. Lasky testified that, were Teixeira's testimony fully credible, she would probably not be employable. Id. at 36. If, however, the evidence did not fully support her

5

claims, Dr. Lasky testified that, although Teixeira would not be able to return to her past relevant work, she would be capable of doing certain light and sedentary jobs such as garment inspector, quality control technician, and surveillance system monitor. Id. at 36-7.

## II. LEGAL FRAMEWORK

### A. The Social Security Act

Under 42 U.S.C. § 405(g), a district court has the power to affirm, modify, or reverse a decision of the Commissioner of Social Security. The district court must make its decision based on the pleadings and transcript of the record before the Commissioner, and "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); see Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Thus, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)) (internal quotation mark omitted).

## B. Social Security Disability Standard

An individual is considered disabled if she is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Administration has promulgated a five-step sequential analysis to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520. The hearing officer must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or medically equals an impairment listed under 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant has the residual functional capacity to perform his past relevant work; and (5) whether the impairment prevents the claimant from doing any other work considering the claimant's age, education, and work experience. Id.

Throughout the first four steps, the claimant bears the burden of showing that she is disabled within the meaning of the Act. Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982). Once the claimant has established that she is unable to return to her former employment, the burden shifts to the Commissioner to prove the fifth step, that the claimant is

able to engage in substantial gainful activity that exists in significant numbers in the national economy.  Id.

### III. HEARING OFFICER'S DECISION

At the hearing on July 7, 2009, Teixeira and Dr. Lasky, an impartial vocational expert, testified.  See Admin. R. 19-38. The hearing officer rendered his decision on July 27, 2009, and made the following findings according to the five-step evaluation rubric pursuant to 20 C.F.R. § 404.1520.

First, the hearing officer found that Teixeira had not engaged in substantial gainful activity since August 31, 2007, the date of the motor vehicle accident in which her injuries were sustained.  Admin. R. 11.  Second, he found that Teixeira suffered from the following severe impairment: disorders of the left hand.  Id.  Third, the hearing officer found that Teixeira did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 12.

Fourth, the hearing officer found that Teixeira had the residual functional capacity to perform light and sedentary work, with some limitations including the inability to handle objects by pulling, grasping, twisting, or performing manipulative tasks more than occasionally with her left hand.  Id.  At this step, the hearing officer noted that Teixeira claimed her "ability to

work [is] considerably more limited and restricted than is established by the medical evidence." Id. at 13.

Finally, at step five, the hearing officer adopted the opinion of the vocational expert, who testified that based on her age, education, work experience, residual functional capacity, and skills, Teixeira could perform light and sedentary work, including jobs such as garment inspector, quality assurance technician, and surveillance system monitor, which exist in significant numbers in the national economy. Id. at 15. Therefore, the hearing officer concluded that Teixeira was not disabled as defined by the Social Security Act. Id. at 16.

**IV. ANALYSIS**

Teixeira contends on appeal that the hearing officer improperly rejected her claims of disabling pain and functional limitation in determining her residual functional capacity and that the hearing officer's findings regarding work skill were not supported by substantial evidence.

   **A. Residual Functional Capacity**

Teixeira claims that the hearing officer erred as matter of law and fact in ruling that Teixeira's limitations were self- imposed and not supported by medical evidence or credible statements from a treating source. Her performance of household chores and failure to demonstrate pain behaviors during the

9

hearing contributed to this ruling.  See Memo. Supp. Pl.'s Mot. Reverse Decision Commissioner 11-12, ECF No. 13 ("Teixeira Memo.").

It is the "responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence."  Irlanda Ortiz, 955 F.2d at 769.  The hearing officer's credibility determination must be supported by substantial evidence.  See Aquiar v. Apfel, 99 F. Supp. 2d 130, 133 (D. Mass. 2000) (Tauro, J.).

Teixeira argues that once a claimant shows objective medical evidence that she suffers from a medically determinable impairment - through objective medical data, clinical findings, or the diagnosis of an examining physician - the hearing officer must recognize the claimant's subjective symptoms.  She rests this argument on the First Circuit's decision in Avery v. Heckler, 797 F.2d 19 (1st Cir. 1986), which requires the hearing officer to "investigate all avenues presented that relate to subjective complaints."  Id. at 28.  Factors a hearing officer must consider include:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions); (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) Treatment, other than medication, for relief of pain; (5) Functional restrictions; and (6) The claimant's daily activities.

Id. at 29.  Teixeira claims that the hearing officer did not consider all of these factors in making his determination that Teixeira's reported limitations are unsubstantiated.

Moreover, Teixeira argues that her "one-handed performance of household chores, with rest breaks and assistance from her daughters, does not demonstrate an ability to work" because there is a degree of flexibility in household work not present in the labor market.  See Teixeira Memo. 13.  She relies on a Seventh Circuit decision holding that even if a claimant were to competently care for children and a household, such activity would not necessarily equate to an ability to work in the labor market.  See Gentle v. Barnhart, 430 F.3d 865, 867 (7th Cir. 2005).  Teixeira further contends that her failure to exhibit pain behaviors during the twenty-minute hearing is not probative of pain caused by using one's arm.  Cf. Miller v. Sullivan, 953 F.2d 417, 422 (8th Cir. 1992) ("Although the demeanor of the claimant may be noticed by [the hearing officer], the [hearing officer] cannot reject a claimant's credibility on account of failure to 'sit and squirm' during a hearing.").

The hearing officer's credibility determination - based on observations of the claimant, evaluation of her demeanor, and consideration of how her testimony fits in with the record evidence - is entitled to deference, especially when supported by specific findings.  See Frustaglia v. Sec'y of Health and Human

Servs., 829 F.2d 192, 195 (1st Cir. 1987). Here, the hearing officer considered the factors enumerated in 20 C.F.R. § 404.1529(c)(1)-(3) as well as the Avery factors with respect to complaints of intense pain. See Admin. R. 13. In fact, the hearing officer specifically considered Teixeira's testimony regarding the nature, location, onset, duration, frequency, and intensity of her pain; precipitating and aggravating factors for her pain; her medications and their side effects; other treatment modalities; her alleged functional limitations; and her activities of daily living. Id. Teixeira's testimony was accepted insofar as it was reasonably consistent with the objective medical evidence. See 20 C.F.R. § 404.1529(c)(4).

The hearing officer properly utilized Teixeira's testimony regarding her activities of daily living in assessing her credibility regarding the intense pain. While a claimant's performance of household chores or the like ought not be equated to an ability to participate effectively in the workforce, evidence of daily activities can be used to support a negative credibility finding. See Berrios Lopez v. Sec'y of Health and Human Servs., 951 F.2d 427, 429 (1st Cir. 1991). That Teixeira claims to have had assistance from her older daughters in completing the household work and that she often takes breaks does not prevent the hearing officer from using the testimony of Teixeira's daily activities as one factor in assessing

credibility.  See Rogers v. Barnhart, 204 F. Supp. 2d 885, 894 (W.D.N.C. 2002) (noting evidence of claimant's daily activities supported hearing officer's negative credibility determination despite assertion that such activities were performed at a slower pace and with the assistance of others).

Furthermore, the hearing officer properly considered Teixeira's demeanor during the hearing as one factor in his credibility assessment.  Teixeira testified that she constantly suffered pain rated at an 8 out of 10.  Admin. R. 26.  Based on this testimony, it was particularly appropriate to consider her demeanor.  The hearing officer specifically stated that demeanor was only one factor considered among several in assessing Teixeira's credibility.  Admin R. 13; cf. Miller, 953 F.2d at 422 (observing that demeanor may be noted by a hearing officer, but cautioning that observations regarding demeanor should not be given determinative weight).

Additionally, the hearing officer relied on the objective medical evidence to support his conclusion.  The contrast between the numerous Occupational Therapy Progress Notes, which rated Teixeira's pain as 2 or 3 out of 10, and her testimony of constantly being in pain rated at an 8 out of 10, supports the negative credibility finding.  See Arruda v. Barnhart, 314 F. Supp. 2d 52, 76 n.24 (D. Mass. 2004) (Bowler, M.J.) (noting that a physician's assessment of pain as "moderate" and not "severe"

supports a negative credibility assessment).  The fact that
Teixeira took medication no stronger than Motrin further supports
discrediting her assertion of disabling pain.  See Albors v.
Sec'y of Health and Human Servs., 817 F.2d 146, 147 (1st Cir.
1986).  Finally, none of the three medical practitioners who
evaluated Teixeira concluded that she was totally unable to work.

    Based on the above considerations, the hearing officer did
not err as matter of fact or law in finding Teixeira's testimony
of disabling pain not credible and ruling that Teixeira's
limitations are self-imposed and not supported my objective
medical evidence.  This finding was supported by substantial
evidence and must be affirmed.

**B. Work Skill**

    Teixeira next claims that the hearing officer's findings
regarding her work skills were not supported by substantial
evidence.  Teixeira notes a discrepancy between what the hearing
officer concluded and the testimony of the vocational expert to
support this argument.  Teixeira also argues that the hearing
officer failed to include her full limitations in the
hypothetical scenarios presented to the vocational expert.

    The discrepancies highlighted by Teixeira are not material
to the hearing officer's decision.  Teixeira notes that the
transferable work skills identified by the hearing officer are
beyond those identified by the vocational expert.  This

incongruence does not alter the fact that there are jobs in the national labor market that Teixeira is capable of performing. The error is harmless, and the Medical-Vocational Guidelines for both the light and sedentary work tables direct a finding of "not-disabled" based on age, education, and past work experience, regardless of whether or not Teixeira possesses transferable skills. See 20 C.F.R. § 404 Subpart P, App. 2, Table 1, Rules 201.23-201.29.

Additionally, Teixeira claims that using her hand or fingers to handle instruments exceeds her functional capacity as she is unable to handle objects with her left hand. See Teixeira Memo. 17. The loss, or loss of use, of an arm or hand, however, is not disabling per se. See Social Security Ruling 83-12; see also Odle v. Sec'y of Health and Human Servs., 788 F.2d 1158, 1161 (6th Cir. 1985). The loss of partial use of her left hand does not make Teixeira categorically disabled. Moreover, there is nothing to indicate that the tasks associated with the inspection jobs identified by the vocational expert require bilateral manipulation with both hands.

Finally, the hearing officer's determination that Teixeira was capable of performing the jobs identified by the vocational expert was supported by substantial evidence. Teixeira claims she is not capable of doing the surveillance system monitoring because she is unable to communicate in English. She supports

this claim by noting that the hearing officer declared her illiterate. Admin. R. 15. The record indicates, however, that while Teixeira may have trouble writing in English, she is perfectly competent in speaking and understanding the language. Teixeira indicated on her Disability Report form that she could speak and understand English, she could read and understand English, and that she could write more than her name in English. Id. at 104. Moreover, the speaking requirements of Teixeira's past relevant work as a quality shoe inspector for New Balance qualifies her to do the surveillance job. Id. at 5.

The hearing officer's finding that Teixeira is able to perform work that exists in substantial numbers in the national economy was supported by substantial evidence. This Court affirms that finding.

V. CONCLUSION

For the reasons stated above, the hearing officer's decision is affirmed. Accordingly, the Court GRANTS the Commissioner's motion for an order affirming the decision of the Commissioner [ECF No. 15] and DENIES Teixeira's motion to reverse the decision of the Commissioner [ECF No. 12]. Judgment shall enter for the Commissioner.

SO ORDERED.

By the Court,

 /s/ William G. Young 
WILLIAM G. YOUNG
DISTRICT JUDGE